LAMBERJACK et al.

v.

OHIO DEPARTMENT OF NATURAL RESOURCES.

Court of Claims of Ohio.

No. 96–10088.

Decided April 15, 1999.

*John F. Potts,* for plaintiffs.

*Betty D. Montgomery,* Attorney General, and *Gregg H. Bachmann,* Assistant Attorney General, for defendant.

---

FRED J. SHOEMAKER, Judge.

Plaintiffs filed this action seeking damages from defendant for an alleged trespass. The case was tried to the court on the sole issue of defendant's liability.

Plaintiff, LAMBCO, Inc., an Indiana corporation, is the owner of the Eastside Marina located in the Turtle Creek Bay of Lake Erie. LAMBCO had purchased the marina from plaintiff, Vincent H. Lamberjack, in 1995.[1] At the time Lamberjack purchased the property, there was only one other marina in the area, the Inland Marina. The Inland Marina could accommodate boats of only up to sixteen feet in length, whereas Lamberjack's marina could accommodate larger boats of up to thirty-four feet.

In the early 1980s, two other marinas were built in the Turtle Creek Bay. One of the marinas was owned by William Gyde, and the other, the Fenwick Marina, was owned by John Gradel. Both of these marinas were built in the shallower portion of the bay and could accommodate boats no larger than sixteen feet. According to Lamberjack, the ability to accommodate larger boats gave the Eastside Marina a competitive advantage over the other marinas in the area.

In 1984, Lamberjack was approached by the owners of the other three marinas about a joint project to widen the Turtle Creek channel by restoring the old dikes, which had been washed away by storm activity. Initially, Lamberjack agreed with the proposal. On June 26, 1984, he executed a document authorizing Gradel to seek a dredging permit on his behalf from the Army Corps of Engineers. Gradel's application was subsequently denied by the Army Corps of Engineers because Turtle Creek Bay lay adjacent to wetlands owned by defendant and known as McGee Marsh.

In order for the dike reconstruction to take place, the marina owners were required to obtain defendant's authorization. Thereafter, Gradel entered into negotiations with defendant regarding the dredging of the Turtle Creek channel and the dike reconstruction. According to Lamberjack, he revoked Gradel's authority to seek a dredging permit on his behalf prior to these negotiations.

In February 1989, a contract was executed by John Gradel as the authorized representative of "four marina operators [marinas] on the south shore of Turtle Creek Bay" and defendant. Under the terms of the contract, defendant agreed

---

1. Plaintiffs, Vincent Lamberjack and LAMBCO, Inc., shall be referred to collectively as Lamberjack.

to secure necessary permits for the dike repair/dredging operations, provide access across state-owned lands for the repair/dredging operation, and provide eight thousand tons of material suitable for "rip-rapping" the dike during the fall of 1989. In return, the marina owners agreed to construct the dikes, provide additional rip-rap material to complete the project, and complete the project by March 15, 1991.

Defendant subsequently acquired the necessary permit from the Army Corps of Engineers. The marina owners hired George Gradel Construction Company, a construction contracting business owned and operated by John Gradel, to commence dredging the Turtle Creek Bay. The project began with the placement of several tons of clay at the shoreline on the site of the old dike to create a platform for a large crane. The crane was used to cast out a large bucket on a swing line and then reel in the bucket as it collected silt and clay from the creek bed.

Lamberjack testified that he first learned of the dredging in January or February 1989. He contacted defendant's employee, Guido Tori, to express his concern that the bucket and drag line might be trespassing on his side of the Turtle Creek channel. At a subsequent meeting, Lamberjack gave Tori a survey of his property that had been performed in 1963, and told Tori that Gradel's crew was crossing his property line. At a meeting conducted on February 24, 1989, defendant agreed to suspend work on the project until a survey could be performed to determine Lamberjack's property line.

In April or May 1989, Lamberjack commissioned David Gulau, a licensed professional surveyor, to conduct a survey of his property. At issue was Lamberjack's western subaqueous boundary line located in the Turtle Creek channel. According to Gulau, the method he used to locate Lamberjack's subaqueous property line was to find the creek's center line as determined by the "thread of the stream."

In performing his survey, Gulau relied upon prior surveys conducted of surrounding properties, the 1963 survey of Lamberjack's property, and metes and bounds descriptions in prior deeds. Gulau testified that Lamberjack's subaqueous property line was fixed by the 1963 survey, regardless of whether the course of the creek had changed since 1963. Based upon his survey, and his observations of the dike construction, Gulau concluded that an encroachment onto Lamberjack's side of Turtle Creek had occurred.

In December 1990, Lamberjack brought an action in the Ottawa County Court of Common Pleas against marina owners Gyde, Gradel, Jholin, and the Inland Marina, alleging, among other things, that these defendants trespassed upon his property by dredging and rebuilding the dike. The trial court rendered judg-

ment in favor of defendants, and Lamberjack appealed. In reversing the trial court judgment, the court of appeals stated:

"In the present case, substantial, competent and credible evidence upon which reasonable minds could differ was offered on the alleged trespass occurring in 1989-1990. This includes issues of whether Gradel was a trespasser, whether Gyde, Jholin and Inland could be held liable under principal-agency principles or as aiders and advisors, and on the issues of damages, nominal and/or compensatory, proximately caused by the trespass, if any. Accordingly, the trial court did err in directing a verdict on Lamberjack's claim of trespass for 1989-1990." *Lamberjack v. Gyde* (Nov. 19, 1993), Ottawa App. No. 92–OT–034, unreported 1993 WL 476313, at *7.

Thereafter, the parties entered into a settlement agreement whereby Gyde, Gradel, Jholin, and Inland agreed to pay Lamberjack the sum of $30,000, representing the value of material which was allegedly dredged from Lamberjack's side of the channel. Lamberjack then brought the instant action against defendant, alleging trespass. In this action, Lamberjack claims that the trespass caused economic harm to the business by unfairly destroying Lamberjack's competitive advantage. According to Lamberjack, after the dredging and dike repair, the competing marinas could accommodate much larger boats.

The elements of a trespass are set forth at 1 Restatement of the Law 2d, Torts (1965) 227, Section 158, as follows:

"Liability for Intentional Intrusions on Land. One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

"(a) *enters land in the possession of the other, or causes a thing or a third person to do so,* or

"(b) remains on the land, or

"(c) fails to remove from the land a thing which he is under a duty to remove." (Emphasis added.)

■ At trial, the exact location of Lamberjack's subaqueous property line and whether Gradel's crew crossed that property line were in dispute. Although Lamberjack's expert maintained that Lamberjack's subaqueous property line was conclusively established by the 1963 survey, he could not state with any degree of certainty exactly how the surveyor established that property line. While Gulau could find all of the reference points utilized in the 1963 survey, he could not determine how the surveyor located the center line of the Turtle Creek channel. Gulau also acknowledged that the course of the Turtle Creek channel had changed since that survey had been conducted.

Additionally, Gradel testified that he was reasonably sure that the bucket and drag line did not cross the center line of Turtle Creek channel, since the crane itself was sitting on the exact location of the old dike. There is no dispute that the old dike is entirely upon defendant's property. Finally, Tori testified that after reviewing the 1963 survey, he was confident that no dredging would occur on Lamberjack's property.

Upon review of the evidence, the court finds that Lamberjack has not proven a trespass by the greater weight of the evidence. The evidence concerning the location of Lamberjack's subaqueous property line is contradictory, and the court finds that he has failed to meet his burden of proof on this threshold issue.

■ Furthermore, even if the court were to find that the drag line and bucket crossed Lamberjack's subaqueous property line during the dredging process, liability cannot be imposed upon defendant for trespass. There was no evidence that any of defendant's employees operated the drag line that allegedly entered Lamberjack's side of the channel. There is also no claim that any portion of the repaired dike rests on Lamberjack's side of the channel. Lamberjack's claim is based solely on defendant's participation in the process of securing the dredging permit and contracting with the other marina owners to repair the dike. Comment *j* of Section 158 states in part:

"*j. Causing entry of a third person.* If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question."

The dredging permit issued by the Army Corps of Engineers did not authorize the marina owners to cross Lamberjack's property line in performing the dike repair. In fact, the document provides that "[i]ssuance of this permit does not grant you any property rights or exclusive privileges, nor does it authorize any injury to the property or rights of others." Similarly, the contract between the marina owners and defendant did not authorize the marina owners or their contractors to cross Lamberjack's property line in performing the dike repair. The language of the contract simply grants the marina owners access across defendant's property. Moreover, the contractor that performed the dredging and dike repair was hired by the marina owners, not defendant.

Based on the totality of the evidence admitted at trial, the court finds that defendant's involvement in the events which led to the trespass, if any, is simply too remote to justify the imposition of liability upon defendant. The evidence

does not support the inference that defendant intended or even anticipated that a trespass would occur as a result of the dredging and dike repair. Under the circumstances, defendant cannot be liable to Lamberjack for trespass.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.